**Franklin C. BROWN, Plaintiff,**

v.

**NEWS GROUP PUBLICATIONS, INC., and Michael Kramer, Defendants.**

Civ. A. No. 82–1615.

United States District Court, M.D. Pennsylvania.

April 5, 1983.

Clyde W. McIntyre, Franklin A. Miles, Jr., McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

Larry H. Spector, Barry E. Ungar, Mann & Ungar, P.A., Philadelphia, Pa., Neal Goldman, Stuart Bondell, Squadron, Ellenhoff, Plesent & Lehrer, New York City, for defendants.

## MEMORANDUM

RAMBO, District Judge.

Franklin C. Brown filed a complaint on December 23, 1982 against News Group Publications, Inc. and Michael Kramer. The complaint alleges that defendant Kramer tape recorded an interview with Brown without Brown's permission. The interview was used as a source for articles written by Kramer and published in *New York* magazine. Brown alleges four causes of action: (1) invasion of privacy by placing Brown in a false light; (2) intentional infliction of emotional distress; (3) invasions of privacy by wrongfully taping the interview; and (4) defamation by libel.

On February 18, 1983 the defendants filed a motion for a change of venue pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The factors to be considered in deciding whether to transfer a case under § 1404(a) are those outlined by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). This

court has noted that the factors are grouped into three categories. *Kyle v. Days Inn of America, Inc.,* 550 F.Supp. 368, 369–70 (M.D.Pa.1982).

(1) those of private interest to the litigants: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

*Id.,* 330 U.S. at 508, 67 S.Ct. at 843;

(2) those which advantage or obstruct a fair trial; It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.

*Id.;*

and (3) those effecting public policy:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Id.* at 508–09, 67 S.Ct. at 843.
550 F.Supp. at 369–70.

The second category of factors, those which advantage or obstruct a fair trial, do not appear relevant to the present case. The defendants do not argue that plaintiff's selection of the Middle District of Pennsylvania is harassment.

The factors which are of private interest to the litigants do have some impact on this case. The defendants argue that a tape recording which is in the possession of the Clerk for the United States District Court for the Southern District of New York is central to the controversy. Defendants' memorandum in support of motion for change of venue at 22. The defendants hypothesize that the tape might somehow be damaged if it was transported to the Middle District. *Id.* This court does not believe that the hypothesized risk is particularly great. The secure transportation of a tape recording from one United States Court to another is certainly within the realm of modern technology. The tape has already been transported at least from the site of the Brown interview to wherever Kramer used it in preparing his stories; to Attorney Neal Goldman; to Cue Recordings, Inc. and then to the District Court for the Southern District of New York. *See* Affidavit of Neal M. Goldman, Exhibit F, defendants' memorandum in support of motion for change of venue. Another trip to this court would seem to involve little additional risk.

The other factor in group one which appears relevant is the question of the availability of witnesses in Harrisburg. The defendants note the issue of compulsory process and have an extensive footnote on the matter, but do not allege that any witness would be denied them because of their inability to compel attendance. *See* defendants' memorandum in support of motion for change of venue at 20. So the only issue is the cost and convenience to the witnesses. The witnesses who will testify about the process of editing the articles and preparing copies of the tape as well as some of the principals are undoubtedly from New York.

Witnesses as to the impact of the articles on the Harrisburg reputation of Brown would be located in this area. The defendants have not shown that the costs of getting their witnesses to Harrisburg would outweigh the costs and inconvenience on the plaintiff's witnesses of a trial in New York.

The third group of factors in the *Gulf Oil* analysis interfaces with the facts of this case in two ways. First, the issue of judicial efficiency would be weighed in favor of transfer if there was a reasonable chance that two or more cases could be consolidated for trial. *Kisko v. Penn Central Transportation Co.*, 408 F.Supp. 984 (M.D.Pa. 1976). Judge Muir in *Kisko* felt that the separate trial of a case "nearly identical to three other cases pending in a nearby federal jurisdiction" would not serve the interests of justice. *Id.* at 987. The present cases are, however, in a quite different configuration. The New York case relates to reputations in the New York community while Brown's case involves his reputation in Harrisburg. The New York litigation also involves articles and personalities who are not involved in the Brown litigation. *See* brief of plaintiff Franklin C. Brown in opposition to defendants' motion for change of venue at 7. The possibility of Brown's case being consolidated with Grass' case in the event of transfer cannot be said to be a "substantial likelihood." 408 F.Supp. at 987.

The third group of factors also raises the question of the choice of law. The defendants do not discuss this factor. · The choice of law, however, is important in this case. Compare the present case with *Kisko* where the controlling law did *not* vary with the district. 408 F.Supp. at 987. The instant situation is markedly different. It is not at all clear whether the Brown lawsuit will be in whole or part governed by New York or Pennsylvania law. The Grass suit would appear to be governed by New York law. In Grass the principals are New Yorkers, the locality of reputation damaged is New York, and the circulation of the articles in question are the New York area. The possibility that Pennsylvania law might govern all or part of the Brown case weighs against transfer.

The Supreme Court circumscribed the weighing process by indicating that "unless the balance is strongly in favor of the defendant, the Plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508–09, 67 S.Ct. at 843. The facts of the present case do not balance strongly in favor of transfer. The factors supporting transfer are at the best tentative. This court will not disturb the plaintiff's choice of forum. The defendants' motion for a transfer under 28 U.S.C. § 1404(a) will be denied.